THOMAS P. O'BRIEN
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division
RICHARD M. PARK
Assistant United States Attorney
California Bar No. 236173
    Room 7516, Federal Building
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-3275
    Fax: (213) 894-7819
    E-Mail: Richard.Park@usdoj.gov

**JS-6**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>  vs.<br><br>GORZEMAN DAIRY L.P.,<br>  and<br>GLENN A. GORZEMAN, an<br>individual,<br><br>          Defendants. | Case No. EDCV 09-721 VAP (Rcx)<br><br>**<u>CONSENT DECREE OF</u>**<br>**<u>PERMANENT INJUNCTION</u>**<br><br><br>Hon. Virginia A. Phillips |

       Plaintiff, the United States of America, by its undersigned attorneys, having filed a Complaint for Permanent Injunction against Defendants Gorzeman Dairy L.P., a limited partnership, and Glenn A. Gorzeman, an individual (collectively, "Defendants"), and Defendants, solely for the purpose of settlement of this case, and without admitting or denying the allegations of the Complaint, having appeared and consented to the entry of this Consent Decree of Permanent Injunction ("Decree"), without contest and before any testimony has been

1  taken, and the United States of America having consented to this

2  Decree;

3          IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

4          I.   This Court has jurisdiction over the subject

5  matter and over all parties to this action.

6          II.   The Complaint for Permanent Injunction states a

7  cause of action against Defendants under the Federal Food, Drug,

8  and Cosmetic Act (the "Act"), 21 U.S.C. §§ 301 et seq.

9          III.   The Complaint alleges that Defendants violate

10 21 U.S.C. § 331(a) by introducing, delivering, and causing to be

11 introduced or delivered into interstate commerce articles of

12 food within the meaning of 21 U.S.C. § 321(f) that are

13 adulterated within the meaning of 21 U.S.C. §§ 342(a)(2)(C)(ii)

14 and 342(a)(4).

15         IV.   Defendants and each and all of their agents,

16 representatives, employees, attorneys, successors, assigns, and

17 any and all persons in active concert or participation with any

18 of them who have received notice of this Decree, are hereby

19 permanently restrained and enjoined, under the provisions of

20 21 U.S.C. § 332(a) and the inherent equity authority of this

21 Court, from directly or indirectly introducing, delivering, or

22 causing to be introduced or delivered into interstate commerce,

23 any article of food within the meaning of 21 U.S.C. § 321(f),

24 and administering to animals any new animal drug, within the

25 meaning of 21 U.S.C. § 321(v), while such drug is held for sale

26 after shipment in intestate commerce, unless and until:

27         A.   Defendants have established and implemented a

28 system that ensures that each of the animals that they acquire,

2

purchase, hold, transport, sell, or consign is individually and permanently identified by tag number;

        B.  Defendants have established and implemented a written record-keeping system that prevents them from selling, consigning, or distributing any animals whose edible tissue contain new animal drugs in amounts above the levels permitted by law.  This system shall include, but not necessarily be limited to, keeping written records on every animal to which Defendants administer drugs.  These records shall include, at a minimum: (1) the identity of each animal that Defendants medicate; (2) the date of each administration of each medication to each animal; (3) the identity of each drug administered; (4) the dosage of each drug used; (5) the route of administration of each drug used; (6) the lawful written order of a licensed veterinarian within the context of a valid veterinarian-client-patient relationship for each drug used, if applicable; (7) the name of the person administering each drug; (8) the proper withdrawal period for each drug administered; (9) the date such withdrawal period will terminate for each drug administered; (10) the date each medicated animal is shipped for slaughter or leaves Defendants' control; and (11) the name and address of the purchaser, receiver, or consignee, of each medicated animal that is shipped for slaughter or leaves Defendants' control;

        C.  Defendants have established and implemented a system that ensures that their use of new animal drugs conforms to the use approved by the United States Food and Drug Administration ("FDA") as set forth in the drugs' approved

3

labeling or to the lawful written orders of a licensed
veterinarian, so long as those orders do not result in illegal
residues.  This system shall include, but not necessarily be
limited to, measures to ensure that the following will not
occur: (1) administration of drugs in excess of the approved
dosage, unless such administration is in accordance with the
lawful written orders of a licensed veterinarian within the
context of a valid veterinarian- client-patient relationship and
is in compliance with 21 C.F.R. § 530; (2) sale or delivery for
slaughter of medicated animals before the expiration of the
relevant withdrawal period; and (3) use in Defendants' animals
of drugs not approved for use in that species or not approved
for the disease or other condition for which the animal is being
treated, unless such use is in accordance with the lawful
written orders of a licensed veterinarian within the context of
a valid veterinarian-client-patient relationship and is in
compliance with 21 C.F.R. § 530;

        D.  Defendants have established and implemented a
drug inventory and accountability system that prevents them from
selling, consigning, or delivering any animals with illegal new
animal drug residues.  This system shall include a written
record for each drug that Defendants purchase or receive for use
in medicating any of their animals, which record shall include,
but not necessarily be limited to: (1) the name of the drug;
(2) the date of purchase or receipt of the drug; (3) the
quantity, strength, and form of the drug purchased or received;
(4) the name and address of the supplier or seller of the drug;
(5) the date each drug is administered; and (6) the amount and

4

method of each administration of each drug.  In addition, the
inventory and accountability system shall include periodic
checks of inventory and records, no less frequently than once
every fourteen days, to ensure that records accurately document
the drugs currently on hand and the disposition of all drugs
purchased or received, including whether the drugs have been
administered;

       E.  Defendants have established and implemented a
quarantine or segregation system that ensures ready distinction
between medicated and unmedicated animals and that prevents
Defendants from selling, consigning, or delivering for slaughter
for human consumption any animals with new animal drug residues
exceeding established tolerance levels;

       F.  Defendants have established and implemented a
system that ensures that each animal that has been medicated is
not directly or indirectly sold, consigned, or delivered for
immediate or ultimate slaughter for human consumption until the
withdrawal period (as specified either in the approved labeling
or in the lawful written orders of a licensed veterinarian, when
appropriate, for each drug used in such animal) has expired.
This system shall also ensure that each purchaser, receiver, or
consignee receives, prior to accepting any animal, a written
statement from Defendants certifying that any animal that has
been medicated has also been withdrawn from the drug for the
appropriate time period or that the animal has not been
medicated.  Except as provided in paragraph IV(G) below, this
written statement must also contain a complete treatment history
that includes the date(s) on which the animal was medicated,

each drug with which the animal was treated (including dose and route of administration), the required withdrawal period for each drug, and the date(s) on which the withdrawal period(s) expired.  Defendants shall, prior to selling any animal, obtain the signature of the purchaser, receiver, or consignee documenting date of receipt of the statement from Defendants. Defendants shall keep, as part of their records, a copy of the signed written statement described in this paragraph;

G.   For any animal in Defendants' possession on the date this Decree is signed for which a complete treatment history for the period prior to the signing of this Decree is not available, the written statement described in paragraph IV(F) shall include, for a period dating back at least two years prior to the date the animal is sold, consigned, or delivered for immediate or ultimate slaughter for human consumption, the date(s) on which the animal was medicated, each drug with which the animal was treated (including dose and route of administration), the required withdrawal period for each drug, and the date(s) on which the withdrawal period(s) expired.

H.   Defendants have established and implemented a system that identifies the source of each animal that they purchase or transport and documents whether such animal has been medicated, the date of such medication, the drug used, and the withdrawal period for such drug;

I.   Defendants have reported to FDA in writing the steps they have taken to comply with paragraphs IV(A)-(H);

1       J. FDA has inspected Defendants' operations,

2    including all records relating to the medication, purchase,

3    sale, consignment, and distribution of food-producing animals;

4       K. Defendants have paid for the costs of the

5    inspections; and

6       L. FDA has notified Defendants in writing that

7    they appear to be in compliance with the requirements of

8    paragraphs IV(A)-(K) of this Decree.

9      V. Prior to obtaining written notification of

10   compliance from FDA as specified in paragraph IV(L) above,

11   Defendants may administer medications as prescribed to an ill

12   food-producing animal that they own, but only after the animal

13   has been examined by a licensed veterinarian and that

14   veterinarian has diagnosed and prescribed the particular

15   medication for that animal.  Defendants shall submit copies of

16   the veterinarian's diagnosis, prescription, and receipts for

17   treatment or the equivalent to FDA within ten calendar days

18   after treatment.

19     VI. Defendants shall maintain all records described

20   in paragraph IV for each animal for a period of at least two

21   years after the date that the animal is sold, consigned, or

22   delivered for slaughter.  These records shall be made available

23   to FDA immediately upon request for purposes of inspection and

24   copying.

25     VII. Within fifteen (15) calendar days after the

26   entry of this Decree, Defendants shall: (a) provide a copy of

27   the Decree, by personal service or by certified mail, return

28   receipt requested, to each and all of Defendants' agents,

representatives, employees, attorneys, successors, assigns, and any and all persons in active concert or participation with any of them, and all persons to whom Defendants have sold, consigned, or delivered any cattle or calves for slaughter within one year preceding the date of entry of the Decree; and (b) explain the terms of the Decree to each employee.

VIII.  Within twenty calendar days after the entry of this Decree, Defendants shall provide the Director, FDA Los Angeles District Office, at the address set forth in paragraph XVII, and to Plaintiff's attorneys, an affidavit from a person with personal knowledge of the facts stated therein, stating the fact and manner of Defendants' compliance with paragraph VII and identifying the names and positions of all persons who were notified pursuant to paragraph VII.

IX.  After entry of the Decree, Defendants shall, within fifteen calendar days of employment of any new employee at Defendants' operation: (a) provide a copy of the Decree, by personal service or by certified mail, return receipt requested, to all such employees; and (b) explain the terms of the Decree to all such employees.

X.  After Defendants receive written notification from FDA as specified in paragraph IV(L) above, Defendants and each and all of their agents, representatives, employees, attorneys, successors, assigns, and any and all persons in active concert or participation with any of them, are permanently restrained and enjoined from directly or indirectly doing or causing to be done any of the following acts:

8

A.   Introducing and delivering for introduction into interstate commerce any article of food, within the meaning of 21 U.S.C. § 321(f), that is adulterated within the meaning of 21 U.S.C. §§ 342(a)(2)(C)(ii) or 342(a)(4);

B.   Administering to any food-producing animal any article of drug, within the meaning of 21 U.S.C. 321(g), unless such administration is in a manner that strictly conforms to such drug's labeled indications and conditions for use or is by or on the lawful written order of a licensed veterinarian within the context of a valid veterinarian- client-patient relationship and is in compliance with 21 C.F.R. § 530; and

C.   Failing to implement and continuously maintain the requirements of this Decree.

XI.   Representatives of FDA shall be permitted, without prior notice and as and when FDA deems necessary, to make inspections of Defendants' operations, including any new locations, and any facility or location at which Defendants hold or store drugs used to treat animals, including food-producing animals and, without prior notice, to take any other measures necessary to monitor and ensure continuing compliance with the terms of this Decree.  Such inspections may, at FDA's discretion, include the taking of photographs and samples and the examination and copying of all records that relate to the drug administration and the holding, delivery, sale, consignment, or distribution of animals at any facility or location Defendants operate, manage, or control.  Such inspections shall be permitted upon presentation of a copy of this Decree and appropriate credentials.  Such inspection

9

authority granted by this Decree is apart from, and in addition
to, the authority to make inspections under the Act, 21 U.S.C.
§ 374.

XII.  Upon request, Defendants shall promptly provide
any information and records to FDA regarding the sale,
consignment, delivery, or medication of any animals.

XIII.  Defendants shall reimburse FDA for the costs of
conducting and evaluating all inspectional, laboratory and
analytical, and other work that FDA deems necessary to evaluate
the Defendants' compliance with any part of this Decree at the
standard rates prevailing at the time that the activities are
accomplished.  As of the date of entry of this Decree, these
rates are: $81.61 per hour and fraction thereof per
representative for inspection and supervision work other than
laboratory and analytical work; $97.81 per hour and fraction
thereof per representative for laboratory and analytical work;
55 cents per mile for travel by automobile; the government rate
or equivalent for travel by air; and the published government
per diem rate or the equivalent, for the areas in which the
inspections are performed, per representative for subsistence
expenses where necessary.  In the event that the standard rates
generally applicable to the FDA supervision of court-ordered
compliance are modified, these rates shall be increased or
decreased without further order of the Court.

XIV.  If any Defendant violates this Decree and is
found in civil or criminal contempt thereof, that Defendant
shall, in addition to other remedies, reimburse Plaintiff for
its attorneys' fees, travel expenses incurred by attorneys and

10

witnesses, expert witness fees, investigational and analytical expenses, and court costs relating to such contempt proceedings.

XV.   If, based on the results of any inspection or analysis conducted after the inspection described in paragraph IV(I) or any other information, FDA finds that any Defendant is not in compliance with the Act or the requirements of this Decree, FDA may, as and when it deems necessary, notify Defendants in writing of the non-compliance and may require that Defendants immediately take one or more of the following actions:

A.   Cease selling or delivering, and causing to be sold or delivered, any article of food within the meaning of 21 U.S.C. 321(f);

B.   Cease medicating animals in a manner inconsistent with the drugs' labeled indications and conditions for use or the lawful written orders of a licensed veterinarian within the context of a valid veterinarian-client-patient relationship and FDA's regulations set forth in 21 C.F.R. § 530; or

C.   Take any other corrective actions as FDA deems necessary to bring Defendants into compliance with this Decree, the Act, and FDA regulations, including, but not limited to, requiring that Defendants re-institute or re-implement any of the requirements in paragraph IV of this Decree.   Upon receipt of such notification, Defendants shall immediately and fully comply with the terms of the notice.   Any cessation of operations or other action ordered by FDA as described above shall continue until receipt by Defendants of written

1  notification from FDA that Defendants appear to be in compliance
2  with the terms of this Decree, the Act, and all applicable
3  regulations.

4          XVI.  Defendants shall notify FDA at least thirty
5  calendar days before any change in ownership, name, or character
6  of the business that occurs after the entry of this Decree, such
7  as reorganization, relocation, assignment, or sale of the
8  business that may affect compliance obligations arising out of
9  this Decree.  Defendants shall serve a copy of this Decree on
10  any prospective successor or assignee at least thirty calendar
11  days prior to such sale or change of business, and shall furnish
12  to FDA an affidavit of compliance with this paragraph within
13  fifteen calendar days of such sale or change of business.

14          XVII.  All notifications, correspondence, and
15  communications to FDA required by the terms of this Decree shall
16  be submitted to the Director, FDA Los Angeles District Office,
17  HFR-PA240, 19701 Fairchild, Irvine, California 92612.

18          XVIII.  All decisions specified in this Decree shall
19  be vested in the discretion of FDA.  FDA's decisions shall be
20  final and, if challenged, shall be reviewed by the Court under
21  the arbitrary and capricious standard set forth in 5 U.S.C.
22  § 706(2)(A).  Review by a Court of any FDA decision rendered
23  pursuant to this Decree shall be conducted without discovery and
24  shall be based exclusively upon the written record that was
25  before FDA at the time the decision was made.

26          XIX.  If any Defendant fails to comply with the
27  provisions of this Decree, that Defendant shall pay to the
28  United States of America liquidated damages in the sum of one

thousand dollars ($1,000.00) for each day that the Defendant
fails to comply with this Decree and an additional five thousand
dollars ($5,000.00) for each animal that the Defendant sells or
delivers for sale in violation of this Decree.  Defendants
understand and agree that the liquidated damages specified in
this paragraph are not punitive in nature and that they do not
in any way limit the ability of the United States of America to
seek, and the Court to impose, additional criminal or civil
contempt penalties based on conduct that may also be the basis
for the payment of liquidated damages.

        XX.   This Court retains jurisdiction of this action
and the parties hereto for the purpose of enforcing and
modifying this Decree and for the purpose of granting such
additional relief as may be necessary and appropriate.

///

///

///

///

///

///

///

///

///

///

///

///

///

XXI.   If Defendants petition the Court for relief from this Decree and, at the time of the petition, in FDA's judgment, Defendants have maintained a state of continuous compliance with the Act, its implementing regulations, and this Decree for the sixty (60) months preceding the petition, Plaintiff will not oppose such petition.

APPROVED:

FOR DEFENDANTS                      FOR PLAINTIFF

                                    THOMAS P. O'BRIEN
                                    United States Attorney
  /s/ Glenn Gorzeman                LEON W. WEIDMAN
GLENN A. GORZEMAN, in his           Assistant U.S. Attorney
   individual capacity and          Chief, Civil Division
   on behalf of GORZEMAN
   DAIRY L.P.

                                      /s/ Richard Park
  /s/ Eric Bronson                  RICHARD M. PARK
GARY S. LINCENBERG                  Assistant U.S. Attorney
ERIC E. BRONSON
Bird, Marella, Boxer, Wolpert,
Nessim, Drooks and Lincenberg,
P.C.                                Attorneys for Plaintiff
Attorneys for Defendants

IT IS SO ORDERED:

DATED: July 29, 2009

_____
Hon. Virginia A. Phillips
United States District Judge

14